*State v. Smith*

STATE OF NORTH CAROLINA v. ERNEST EUGENE SMITH, II

STATE OF NORTH CAROLINA v. DAVID MICHAEL SCHOCH

No. 8726SC320

(Filed 1 March 1988)

1. **Obscenity § 1— disseminating obscenity—constitutionality of statute**

   The statute prohibiting the dissemination of obscenity is not unconstitutional for failing expressly to include the phrase "taken as a whole" in subsection (b)(3) or for failing to include an express "public place" requirement. Furthermore, the "contemporary community standards" test set forth in the statute for determining obscenity is constitutional.

2. **Obscenity § 3— value of material—reasonable man standard—instruction on community standard—harmless error**

   The trial court in a prosecution for disseminating obscenity erred in instructing the jury that it should apply a community standard rather than a reasonable man standard in deciding the question of a work's value, but such error was harmless because no rational juror, properly instructed, could find value in the materials in question.

3. **Obscenity § 1— single transaction—sale of multiple items—separate offenses**

   In enacting N.C.G.S. § 14-190.1(a) the legislature intended that a defendant could be convicted of a separate offense for each obscene item disseminated in a single sales transaction.

   Judge WELLS concurring in part and dissenting in part.

APPEAL by defendants from *Lewis, Robert D., Judge.* Judgment entered 7 November 1986 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 16 November 1987.

Defendants David Michael Schoch and Ernest Eugene Smith, II, were convicted in a jury trial of multiple violations of N.C.G.S. sec. 14-190.1, which prohibits the dissemination of obscene literature and exhibitions. The trial court imposed fines, costs of court, and active prison sentences on each defendant. Defendants appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Thomas J. Ziko, for the State.*

*James, McElroy & Diehl, P.A., by Edward T. Hinson, Jr., and Mark T. Calloway, for defendant-appellant Smith.*

*Ferguson, Stein, Watt, Wallas, and Adkin, P.A., by John W. Gresham, for defendant-appellant Schoch.*

JOHNSON, Judge.

Defendants bring forward eleven assignments of error. For reasons stated below, we overrule all assignments.

The basic facts are not in dispute. On the afternoon of 1 October 1985, Officer H. F. Frye of the Charlotte City Police entered the Cinema Blue Bookstore in Charlotte, where defendant Schoch was the manager and defendant Smith worked as a clerk, and purchased from Schoch a package of magazines containing one entitled "Cum Up My Asshole" and a film entitled "Nature Lovers." Defendant Smith took no part in this first sale. Later that same afternoon, Sergeant T. G. Barnes, also of the Charlotte City Police, entered the same bookstore and purchased, from defendants Schoch and Smith together, a magazine entitled "Butt-Fucked Brunette," a magazine entitled "Bi-Bi Love No. 2," and a motion picture film entitled "Swedish Classics, No. 113, Play Ball." Defendant Schoch was subsequently indicted on five counts of violating G.S. sec. 14-190.1 (one count for each of the three magazines and two films he had sold to Officer Frye and Sergeant Barnes). Defendant Smith was indicted on three counts of violating the same statute (one count for each of the two magazines and one film he, together with Schoch, had sold to Sergeant Barnes). Neither defendant contests that he sold the materials.

[1] By their first Assignment of Error defendants contend that G.S. sec. 14-190.1 violates individual rights protected by the North Carolina and United States Constitutions. We have ruled on all of defendants' constitutional claims in prior cases. In *Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 351 S.E. 2d 305 (1986), *aff'd*, 320 N.C. 485, 358 S.E. 2d 383 (1987), we rejected arguments that G.S. sec. 14-190.1 is unconstitutional for failing expressly to include the phrase "taken as a whole" in subsection (b)(3) or for failing to include an express "public place" requirement in its scheme. And in *State v. Mayes*, 86 N.C. App. 569, 359 S.E. 2d 30 (1987), we upheld the constitutionality of the "contemporary community standards" test for determining obscenity as a jury question.

[2] By part (c) of their tenth assignment, defendants correctly point out that the trial court's instructions on the value prong of the obscenity test were erroneous in light of the recent decision of the Supreme Court in *Pope v. Illinois*, 107 S.Ct. 1918

(1987). In *Pope* the Illinois trial court charged the jury that it should apply community standards in deciding the question of a work's value. On appeal, the Supreme Court held that the value question must be determined not in the light of community standards, but rather on an objective basis, i.e., the reasonable person standard. In the present case the trial court gave the same instruction held erroneous in *Pope*. However, the Supreme Court also held in *Pope* that the appealed convictions should stand "if a reviewing court concludes that no rational juror, if properly instructed, could find value in the magazines." We have examined the materials introduced into evidence in the present case and have concluded that no rational juror, properly instructed, could find value in them. Hence, we conclude that the trial court's error was harmless.

We have carefully examined assignments two through nine, and parts A and B of assignment ten, and find them all to be without merit. However, we choose to discuss assignment four.

[3] By their fourth Assignment of Error, defendants contend that the State's "multiplicitous pleading" and subsequent prosecution violated constitutional guarantees against double jeopardy. As hereinbefore indicated, the basis for defendant Schoch's five convictions was the sale of three magazines and two films in two separate transactions; and the basis for defendant Smith's three convictions was his sale of two magazines and one film in one transaction. The State answers that the protection against double jeopardy does not bar the State from imposing multiple punishments for offenses arising out of one transaction if all charges are tried simultaneously and if the legislature intended the offenses to be punished separately.

We find that the Double Jeopardy Clause of the U.S. Constitution is irrelevant to the resolution of this case. The Double Jeopardy Clause bars (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711 (1969). Where multiple punishment is involved, the Double Jeopardy Clause prohibits courts from punishing cumulatively the same act or conduct under more than one statute absent clear legislative authorization. *See Missouri v. Hunter*, 459 U.S. 359 (1983). However, in the

case at bar, we are concerned not with the violation of two or more statutes by one transaction, but rather with multiple violations of *one* statute. Therefore, the question is: What is the allowable unit of prosecution?

The State contends and defendants concede, that the fixing of the unit of prosecution lies within the province and discretion of the General Assembly. However, defendants cite *Bell v. United States*, 349 U.S. 81 (1955), for the proposition that where a legislature's intent in this regard is ambiguous, the courts should resolve the ambiguity in favor of lenity toward the defendant. We are unconvinced and refuse to apply the reasoning of *Bell* to the facts of the case *sub judice*. The ambiguity which would allow us to "second-guess" the legislature and apply lenity toward the defendant in the absence of any ascertainable intent, is simply not present here. G.S. 14-190.1(a) provides in pertinent part:

> (a) It shall be unlawful for any person, firm or corporation to intentionally disseminate obscenity. A person, firm or corporation disseminates obscenity within the meaning of this Article if he or it:
>
> (1) Sells, delivers or provides or offers or agrees to sell, deliver or provide *any obscene writing, picture*, record or other representation or embodiment of the obscene; or . . .
>
> (3) Publishes, exhibits or otherwise makes available *anything obscene*; or
>
> (4) Exhibits, presents, rents, *sells, delivers or provides*; or offers or agrees to exhibit, present, rent or to provide: *any obscene still or motion picture, film*, filmstrip, or projection slide, or sound recording, sound tape, or sound track, or *any matter or material of whatever form* which is a representation, embodiment, performance, or publication of the obscene.

(Emphasis supplied.)

We feel that the express statutory language used provides us with the clear intention that the "sale" of "any" obscene item constitutes a separate offense, regardless of whether, as here, defendants disseminated several items during each sales transaction. *See Educational Books, Inc. v. Commonwealth of Va.*, 228 Va. 392, 323 S.E. 2d 84 (1984) (interpreting Va. Code Ann. sec. 18.2-374

to consider the sale of each one of a number of obscene materials as a separate offense).

In addition, we are guided by the reasoning set forth in *State v. Wilds*, 88 N.C. App. 69, 362 S.E. 2d 605 (1987), this Court's most recent opportunity to consider the issue raised by this assignment. In *Wilds*, the defendant was convicted of two counts of disseminating obscenity based upon his sale of two films in a single transaction entitled "These Bases are Loaded," containing depictions of males engaging in oral and anal intercourse, and "Three Of A Kind," depicting a male and two females engaging in vaginal intercourse, oral stimulation and masturbation. Both convictions were upheld.

The Court found that the clear legislative intent of G.S. 14-190.1(a) is to consider the dissemination of each item listed within the statute as a "separate unlawful act." The Court also reasoned in reaching its conclusion, that it would be basically unsound to affix defendant's proposed unit of prosecution, i.e., allowing one indictment only for each transaction, irrespective of volume or quantity disseminated, because each item disseminated must be evaluated separately to determine whether it meets the legal definition of obscenity.

With this reasoning and decision we are in accord, and therefore affirm the convictions of both defendants, holding that they were properly convicted of separate offenses arising out of the dissemination of each item determined by the jury to be obscene.

No error.

Judge COZORT concurs.

Judge WELLS concurs in part and dissents in part.

Judge WELLS concurring in part and dissenting in part.

I concur with the majority in rejecting assignments of error 1-3 and 5-10. However, in my opinion, defendants' assignment of error 4 should be sustained.

As the majority indicates, the question presented by this assignment is: What is the allowable unit of prosecution under G.S.

§ 14-190.1? All sides agree that it lies within the province of the General Assembly to fix the unit of prosecution. Furthermore, the majority seems impliedly to endorse, in principle, the rule of statutory construction laid down in *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) — that where a legislature fails clearly and unambiguously to establish the unit of prosecution, such ambiguity should be resolved in favor of lenity toward the defendant. But unlike the majority I discern in G.S. § 14-190.1 no clear expression of legislative intent to punish separately and cumulatively for *each and every* obscene item disseminated, regardless of the number of transactions involved.

In *Bell* the issue was whether the simultaneous interstate transportation of two women in violation of the Mann Act constituted two offenses or only one. The relevant provisions of the Act were: "Whoever knowingly transports in interstate or foreign commerce . . . *any* woman or girl for the purpose of prostitution or debauchery . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both." (Emphasis added.) The Supreme Court refused to construe "any" as a mandate to punish separately and cumulatively for each and every woman unlawfully transported. The Supreme Court stated:

> When Congress has the will it has no difficulty in expressing it — when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, *to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity.* And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. *It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a*

*single transaction into multiple offenses. . . .* [Emphasis added.]

The resemblance between *Bell* and the present case is obvious. As the Mann Act prohibited the unlawful interstate transportation of "*any* woman or girl," so our G.S. § 14-190.1 proscribes the dissemination of "*any* obscene writing, picture, record or other representation or embodiment of the obscene." I cannot espy in the word "any" an unambiguous mandate to punish separately for each "stick" in the transactional "faggot" any more than the Supreme Court could. Accordingly, applying the *Bell* rule of lenity, I construe "any" in the context of our statute to signify the number of transactions in which a defendant sells at least one obscene item.

The State contends that since each indictment charges with disseminating a different item, the determination whether each item was obscene must be made independently, thus justifying separate, and cumulative, punishments. However, by this reasoning the State could prosecute separately and cumulatively *each and every* obscene photograph in a large magazine on the ground that subsection (a)(1) prohibits the dissemination of "*any* obscene . . . picture." But I do not think the General Assembly intended to appoint the staple gun to be the arbiter of the unit of prosecution. I fully recognize that under my conception of the statute a retailer who sells a single obscene item may be subject to the same punishment as a distributor who delivers 100 obscene items to a store. However, until the General Assembly unambiguously declares a contrary intent, we should assume that a single sale in contravention of G.S. § 14-190.1 does not spawn multiple indictments.

In the present case, since the evidence showed that Schoch participated in two unlawful transactions, and Smith in only one, the trial court should have dismissed three of the indictments against Schoch and two of the indictments against Smith.